**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| |
|---|
| Jonuel Pérez-Figueroa, *et al.*, |
| |
| **Plaintiffs,** |
| |
| **v.** |
| |
| PR Waste Management Group, LLC, |
| |
| **Defendant.** |

**CIVIL NO. 23-1471(RAM)**

**OPINION AND ORDER**

Pending before the Court is Defendant PR Waste Management Group, LLC's ("Defendant" or "PR Waste") *Motion for Summary Judgment* ("*Motion*") requesting the Court dismiss Plaintiff's *Amended Complaint* in its entirety. (Docket Nos. 106 and 19, respectively). For the following reasons, Defendant's *Motion* is **GRANTED** and Plaintiff's *Amended Complaint* is **DISMISSED**.

### I.    PROCEDURAL BACKGROUND

On January 22, 2024, Plaintiff Jonuel Pérez-Figueroa ("Plaintiff" or "Mr. Pérez-Figueroa") filed a *Second Amended Complaint* against PR Waste for alleged violations of: (1) Title VII of the Civil Rights Act; (2) Article II of the Puerto Rico Constitution; (3) Puerto Rico Laws 80, 90, 100, and 115; and (4) Articles 1536 and 1540 of the Puerto Rico Civil Code. (Docket No. 19 at 17-20). Plaintiff avers he suffered disparate treatment and hostile work environment due to his race. Id. at 17-18. Plaintiff

further alleges he was retaliated against for engaging in protected activity such as complaining to his supervisors. Id. Finally, Plaintiff argues he is entitled to a severance payment, compensatory damages, punitive damages, costs and reasonable attorney's fees, and reinstatement to his previous position at PR Waste. Id. at 20.

On November 25, 2025, Defendant filed the present *Motion*, a *Memorandum of Law in Support of the Motion for Summary Judgment*, and a *Statement of Uncontested Material Facts*. (Docket No. 106, 106-1 and 106-2, respectively). Therein, Defendant argued that: (1) Plaintiff's Title VII claim impermissibly conflates race and color discrimination; (2) Plaintiff failed to establish a prima facie case for discrimination or retaliation; (3) Plaintiff did not meet PR Waste's performance expectations; and (4) PR Waste had legitimate reasons to suspend and later terminate Plaintiff's employment. Id.

In response, on February 17, 2026, Plaintiff filed an *Opposition to Defendant PR Waste Management Group LLC's Motion for Summary Judgment*, accompanied by a *Statement of Material Facts Which Preclude Entry of Summary Judgment in Defendant's Favor Pursuant to Local Rule 56(c)* and a *Local Rule 56(c) Response to Defendant PR Waste Management Group's Statement of Uncontested Material Facts in Support of Their Motion for Summary Judgment*. (Docket Nos. 115, 116 and 117, respectively). On March

23, 2026, Defendant filed a *Reply* and, on April 30, 2026, Plaintiff filed a *Sur-reply*. (Docket Nos. 122 and 131).

## II.  LEGAL STANDARD

Summary judgment is proper under Fed. R. Civ. P. 56(a) "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" White v. Hewlett Packard Enterprise Company, 985 F.3d 61, 68 (1st Cir. 2021) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322)). A genuine dispute exists "if the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party." Alicea v. Wilkie, 2020 WL 1547064, at *2 (D.P.R. 2020) (quotation omitted). A fact is material if "it is relevant to the resolution of a controlling legal issue raised by the motion for summary judgment." Bautista Cayman Asset Co. v. Terra II MC & P, Inc., 2020 WL 118592, at *6 (D.P.R. 2020) (quotation omitted).

The movant bears the burden of showing a lack of genuine issues of material fact. *See* Feliciano-Muñoz v. Rebarber-Ocasio, 970 F.3d 53, 62 (1st Cir. 2020) (citing Celotex Corp., 477 U.S. at 323). This burden is met when the movant shows that the nonmovant "has failed 'to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" E.E.O.C.

Civil No. 23-1471 (RAM)                                                  4

v. Kohl's Dept. Stores, Inc., 774 F.3d 127, 131 (1st Cir. 2014) (quoting Celotex Corp., 477 U.S. at 322).

The non-movant may defeat summary judgment by evincing, "through submissions of evidentiary quality, that a trialworthy issue persists." Robinson v. Town of Marshfield, 950 F.3d 21, 24 (1st Cir. 2020) (quotation omitted). It "cannot merely 'rely on an absence of competent evidence but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute.'" Vogel v. Universal Insurance Company, 2021 WL 1125015, at *2 (D.P.R. 2021) (quoting Feliciano-Muñoz, 2020 WL 4592144, at *6). Conclusory allegations and unsupported speculation do not defeat summary judgment. See River Farm Realty Tr. v. Farm Family Cas. Ins. Co., 943 F.3d 27, 41 (1st Cir. 2019) (quotation omitted).

Local Rule 56 also governs summary judgment. See L. CV. R. 56. Per this Rule, a non-movant must "admit, deny or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of material facts." L. CV. R. 56(c). Adequately supported facts shall be deemed admitted unless controverted per the manner set forth in Local Rule 56. See Muñiz Negrón v. Worthington Cylinder Corporation, 2021 WL 1199014, at *3 (D.P.R. 2021) (quotation omitted). Litigants ignore this Rule at their peril. Id.

Civil No. 23-1471 (RAM)                                                    5

### III. FINDINGS OF FACT

To make findings of fact, the Court analyzed Defendant's *Statement of Uncontested Material Facts in Support of Motion for Summary Judgment* ("DSUF") (Docket No. 106-2) as well as Plaintiff's *Local Rule 56(C) Response to Defendant PR Waste Management Group's Statement of Uncontested Material Facts in Support of their Motion for Summary Judgment* ("*Response*") and *Statement Of Material Facts which Preclude Entry of Summary Judgment in Defendant's Favor Pursuant to Local Rule 56(C)* ("PSUF") (Docket Nos. 117 and 116, respectively).

After only crediting material facts that are properly supported by a record citation and uncontroverted, the Court makes the following findings of fact:

1.  PR Waste is a Puerto Rican company that provides a variety of services in the collection of municipal and commercial solid, regulated biomedical waste; design and administration of recycling programs; administration of sanitary landfill systems; and maintenance of institutional, municipal, and private vehicle fleets. (Docket No. 106-29 at ¶4).

2.  PR Waste divides its residential garbage collection and disposal operation into geographical regions, which are divided into projects, and then divided into routes. Id. at ¶6-7.

Civil No. 23-1471 (RAM)                                              6

3.   Workers ("*obreros*") are the employees who pick up the trash and truck drivers are the employees who steer the garbage trucks. Id. at ¶9.

4.   Truck drivers and workers are assigned to established routes in each project. Id. at ¶8.

5.   Plaintiff began working for PR Waste on March 28, 2011, as a worker on a temporary basis and subsequently became a regular employee and truck driver. (Docket No. 106-3 at 87-89).

6.   As a truck driver, Plaintiff was supervised by the Project Supervisor who, in turn, reported to the Regional Manager. (Docket No. 106-29 at ¶ 14).

7.   At the time of his termination, Plaintiff reported to Project Supervisor José Quiñones ("Mr. Quiñones") who, in turn, reported to Regional Manager Maribel Ortiz ("Ms. Ortiz"). (Docket No. 106-30 at ¶¶ 2 and 8).

8.   During 2022, Plaintiff was assigned to the morning shift of one of the San Juan 3 Project routes along with two other workers, Mr. Wilfredo Marrero ("Mr. Marrero") and Mr. Calvin Smith ("Mr. Smith"). (Docket No. 106-3 at 112-13).

9.   When Mr. Pérez-Figueroa began to work on this route, Ms. Ortiz instructed Plaintiff that: (1) the workers had to travel in the garbage truck and could not take their

personal cars on the route; and (2) the workers had to collect up to eighteen (18) trash bags per stop on the route. Id. at 266; PSMF at ¶ 2.

10. Mr. Pérez-Figueroa testified that, on August 19, 2022, when he stopped the garbage truck for regeneration,[1] Mr. Smith got upset about the stop and began to walk on the street, from one side to another, saying "this cuckold is doing it just to fuck around" ("*este cabrón lo hace por joder*") and "tomorrow I am not waking up early anymore" ("*mañana no voy a madrugar más na'*"), which made Plaintiff feel threatened. (Docket 106-3 at 130-32).

11. On August 19, 2022, Plaintiff sent a WhatsApp message to Mr. Ortiz complaining about the situation on the route. (Docket No. 112-7).

12. On August 22, 2022, Plaintiff met with Ms. Ortiz, Mr. Quiñones, Mr. Marrero, and Mr. Smith to discuss the August 19 incident and improve communication between them. (Docket No. 106-3 at 125-33).

13. Plaintiff testified that, during this meeting, he also informed Ms. Ortiz that Mr. Marrero and Mr. Smith were taking their personal cars on the route and were refusing

---

[1] Truck regeneration is an automatic self-cleaning process for the garbage truck's emissions system, which burns off soot and keeps the emissions system working efficiently. (Docket No. 106-30 at ¶12). The garbage truck automatically notifies the need to regenerate through a blinking light, and the garbage truck must be stopped during the regeneration process. Id.

to pick up the eighteen (18) bags of trash they were required to collect per stop. Id.

14. On Friday, September 30, 2022, Plaintiff met with Ms. Ortiz and complained about Mr. Smith's behavior on the route. Id. at 139; (Docket No. 106-30 at ¶ 13).

15. Specifically, Mr. Pérez-Figueroa indicated to Ms. Ortiz that Mr. Smith did not speak to Plaintiff and remained distant from him. (Docket No. 106-3 at 140); (Docket No. 106-30 at ¶ 13).

16. During this meeting, Plaintiff also reiterated that Mr. Marrero and Mr. Smith were taking their cars on the route instead of riding in the truck as instructed. (Docket No. 106-3 at 141-42).

17. Mr. Pérez-Figueroa testified that, during this meeting, he informed Ms. Ortiz that, on one occasion, Mr. Smith had screamed out loud during the early morning hours "this asshole, I'm looking for an excuse to rip his head off" ("*este cabrón, estoy buscando una excusa pa' arrancarle la cabeza*") while looking and pointing at Plaintiff via the rearview mirror. (Docket 106-3 at 140).

18. Mr. Pérez-Figueroa informed Ms. Ortiz that, because of Mr. Smith's behavior, Plaintiff feared for his safety. (Docket No. 106-30 at ¶13).

Civil No. 23-1471 (RAM)                                                    9

19. Ms. Ortiz informed Mr. Pérez-Figueroa they would meet with the Human Resources Department ("HR") on October 4, 2022, to begin a process of mediation or conflict resolution. (Docket 106-3 at 142-43); (Docket No. 106-30 at ¶15).

20. On Sunday, October 2, 2022, Mr. Pérez-Figueroa sent a WhatsApp message to Mr. Quiñones stating that Plaintiff would not return to work until the October 4th meeting with HR because Plaintiff feared for his safety. (Docket 112-9).

21. Plaintiff did not report to work on October 3 or 4, 2022. Id. at 145.

22. The October 4, 2022, meeting did not take place. (Docket 106-3 at 143).

23. On October 5, 2022, Plaintiff sent a letter to HR narrating the events that transpired with Mr. Smith and requesting an investigation into the matter. (Docket No. 112-11 at 3).

24. In that letter, Mr. Pérez-Figueroa stated that, to return to work, Mr. Smith had to be removed from Plaintiff's route, or, in the alternative, Plaintiff had to be assigned to a different route. Id.

25. On October 6, 2022, Dr. Carlos Rosa ("Dr. Rosa"), the Human Resources Director, assigned Mr. Pérez-Figueroa's complaint to Ms. Neyshia Rivera ("Ms. Rivera"), Senior

Civil No. 23-1471 (RAM)                                                  10

Human Resources Specialist, for further investigation. (Docket No. 106-29 at ¶ 20).

26. On October 7, 2022, Ms. Rivera interviewed Mr. Pérez-Figueroa via telephone call. (Docket No. 106-3 at 166-67); (Docket No. 112-14).

27. During the interview, Plaintiff informed Ms. Rivera that he refused to return to work if Mr. Smith was not suspended from his job. (Docket No. 112-14).

28. Mr. Pérez-Figueroa also reiterated his allegations against Mr. Smith and stated that, on two (2) other occasions, when Plaintiff accelerated the truck, Mr. Smith said "this asshole is doing this just to fuck around, he is doing it with bad intentions" ("*este cabrón está haciendo esto por joder, lo está haciendo de maldad*"). Id. at 8.

29. During the phone call, Plaintiff indicated that he had not returned to work to "avoid a tragedy". Id. at 10.

30. Mr. Rivera then instructed Mr. Pérez-Figueroa to report to work with his immediate supervisor. (Docket Nos. 112-17; 117 at 13).

31. On October 13, 2022, Mr. Pérez-Figueroa sent an email to Ms. Rivera and Ms. Ortiz stating that Ms. Rivera had spoken with him on the phone earlier that day and informed him that, due to his absences, he was suspended without pay

until the investigation was completed. (Docket No. 124-1 at 2).

32. During the following weeks, Ms. Rivera took a leave of absence and returned to work on December 5, 2022. (Docket No. 106-31 at ¶25).

33. On December 6, 2022, Ms. Rivera texted Mr. Pérez-Figueroa and requested Plaintiff contact her. (Docket No. 112-18).

34. Mr. Pérez-Figueroa answered that any communication directed to him should be sent to his attorneys. Id.

35. On December 6, 2022, Plaintiff filed an Equal Employment Opportunity Commission ("EEOC") charge alleging discrimination based on race and retaliation. (Docket No. 106-21).

36. On December 21, 2022, Ms. Rivera sent Plaintiff a memorandum from Dr. Rosa dated December 20, 2022. (Docket No. 106-3 at 200).

37. In that memorandum, Dr. Rosa informed Mr. Pérez-Figueroa that he must return to work by December 28, 2022, and report to Mr. Quiñones during Plaintiff's regular work hours. (Docket No. 112-21 at 3).

38. Dr. Rosa further indicated that, if Plaintiff failed to return to work by that date, it would be considered work abandonment. Id.

Civil No. 23-1471 (RAM)                                                    12

39. In response, on December 26, 2022, Plaintiff sent an email to PR Waste pointing out that Dr. Rosa's memorandum did not specify: (1) what work shift and route Plaintiff would work; (2) whether Plaintiff would work with Mr. Smith; and (3) the details of the investigation. (Docket No. 112-22).

40. On December 27, 2022, Dr. Rosa sent a letter to Mr. Pérez-Figueroa. (Docket No. 106-3 at 207).

41. In that letter, Dr. Rosa informed Plaintiff that: (1) PR Waste concluded Mr. Smith's conduct did not occur as Plaintiff described it and that there was no harassment or threats in Plaintiff's place of work as he described it; and (2) PR Waste would reassign Plaintiff to a new route, with a new work group, where he would no longer work with Mr. Smith. (Docket No. 112-23).

42. Dr. Rosa further indicated Plaintiff was expected to report to work on December 29, 2022, at the Toa Baja region, on the morning shift. Id.

43. Dr. Rosa stated that failure to do so would be understood as work abandonment. Id.

44. Plaintiff did not return to work on December 29, 2022. (Docket No. 106-3 at 212).

45. Mr. Pérez-Figueroa's employment was terminated effective January 2, 2023. (Docket No. 106-29 at ¶45).

46. Plaintiff testified he is white or tan and Mr. Smith is dark or black. (Docket No. 106-3 at 118-19).

47. Mr. Pérez-Figueroa also admitted his skin color is similar to Mr. Smith's. Id.

48. Plaintiff testified that his suspension and termination from employment at PR Waste were "not exactly due to [race]." (Docket No. 106-3 at 218).

49. Mr. Pérez-Figueroa further testified that the basis for his allegation that his race was a factor in his suspension and termination is that Mr. Smith was not suspended, whereas Plaintiff was. Id.

50. Plaintiff testified that, because of his complaint on September 30, 2022, he decided not to return to work, and that he was terminated because he did not return. (Docket No. 106-3 at 226-228).

51. Plaintiff testified that he does not believe, understand, or allege that the discrimination charge filed by him before the EEOC had something to do with his employment termination. Id.

### IV.  DISCUSSION

#### A. Title VII

Title VII "provides employees with the right to work in an environment free from discrimination because of such employee's race, color, religion, sex, or national origin." Hernández v.

Wilkinson, 986 F.3d 98, 102 (1st Cir. 2021) (citing 42 U.S.C. § 2000e-2(a)(1)) (internal quotation marks omitted). "Title VII also protects employees from being discriminated against because the employee has opposed any practice made an unlawful employment practice by this subchapter, or because the employee has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." Id. (quoting 42 U.S.C. § 2000e-3(a)) (internal quotation marks omitted).

Plaintiffs asserting Title VII claims must comply with a host of procedural requirements. Most notably, under 42 U.S.C. § 2000e-5(e)(1), Title VII plaintiffs must file an administrative charge with the EEOC either 180 or 300 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). "Because Puerto Rico is a so-called 'deferral' jurisdiction, the administrative charge must be filed within 300 days of the alleged unlawful conduct." Frederique-Alexandre v. Dep't of Nat. & Env't Res. Puerto Rico, 478 F.3d 433, 437 (1st Cir. 2007) (citation omitted). Here, it is uncontested that Plaintiff timely filed an EEOC charge on December 6, 2022, alleging discrimination based on race and retaliation. (Docket No. 106-21).

### 1. Race Discrimination

#### i.    *Disparate Treatment*

Under Title VII, a plaintiff can allege either intentional

discrimination on the basis of a protected trait, known as disparate treatment, or unintentional discrimination that has a disproportionate adverse effect on the protected class, known as disparate impact. *See* Ricci v. DeStefano, 557 U.S. 557, 577 (2009); Smith v. F.W. Morse & Co., Inc., 76 F.3d 413, 420 (1st Cir. 1996).

Where direct evidence of discrimination is lacking, claims are subject to the burden shifting analysis articulated by the Supreme Court in McDonnell Douglas. 411 U.S. 792 (1973). To succeed on a Title VII claim for discrimination, the plaintiff carries the initial burden of establishing a prima facie case of discrimination by a preponderance of the evidence. *See, e.g.*, Aly v. Mohegan Council, Boy Scouts of Am., 711 F.3d 34, 46 (1st Cir. 2011).

Pursuant to this burden-shifting framework, when asserting claims of disparate treatment, a plaintiff bears the burden of establishing a prima facie case that: (1) they are a member of a protected class; (2) they possessed the necessary qualifications and adequately performed their job; (3) they suffered an adverse employment action; and (4) similarly situated members outside their protected class were treated more favorably. Perez-Medina v. Yellen, 2022 WL 22956452, at *21 (D.P.R. 2022) (citing Pizarro-Correa v. Puerto Rico Internal Revenue Dep't, 267 F. Supp. 3d 369, 376 (D.P.R. 2017)).

Once the plaintiff establishes a prima facie case, "the presumption arises that the employer unlawfully discriminated

against plaintiff, shifting to the employer the burden of articulating a legitimate, nondiscriminatory reason for the adverse employment action." Polanco v. UPS Freight Servs., Inc., 217 F. Supp. 3d 470, 489 (D.P.R. 2016); *see* also Benoit v. Technical Mfg. Corp., 331 F.3d 166, 174 (1st Cir. 2003). Should defendant be successful, plaintiff can no longer rest on the initial inference of discrimination. *See, e.g.*, Bennett v. Saint-Gobain Corp., 507 F.3d 23, 31 (1st Cir. 2007). "In that case, the burden shifts back to the plaintiff to show that the reason proffered was a pretext concealing unlawful discrimination of the type alleged." Polanco, 217 F. Supp. 3d at 490; *see* Rodríguez-Cuervos v. Wal-Mart Stores, Inc., 181 F.3d 15, 19 (1st Cir. 1999).

Here, Mr. Pérez-Figueroa alleges he is white and, as such, he is part of a protected class. However, Plaintiff's argument fails on the second prong of the McDonnell Douglas framework. By Plaintiff's own admission, he stopped reporting to work on October 3, 2022. (Docket 106-3 at 145). Therefore, Plaintiff did not adequately perform his job since at least that date. Moreover, while Plaintiff showed that he suffered an adverse employment action when he was suspended and later terminated, satisfying the third prong of the framework, he did not demonstrate that similarly situated members outside his protected class were treated more favorably. Plaintiff alleges Mr. Smith replaced him as truck driver in the route when Mr. Pérez-Figueroa was suspended while PR Waste

alleges a white man, Mr. Jorge Luis González-Ortega, was the replacement. (Docket Nos. 106-3, at 296 and 106-30 at 6, respectively). However, Mr. Pérez-Figueroa testified that Mr. Smith, who was not suspended or terminated, was dark or black but Plaintiff also testified that Mr. Smith had a similar skin color to him. (Docket No. 106-3 at 118-19). As such, Mr. Pérez-Figueroa failed to show that Mr. Smith was a similarly situated member outside Plaintiff's protected class or that any other similarly situated members outside Plaintiff's protected class were treated more favorably. He, therefore, did not establish a prima facie case of disparate treatment discrimination.

Even crediting Mr. Pérez-Figueroa's allegation that Mr. Smith replaced him as truck driver and that he is outside of Plaintiff's protected class, and assuming, *arguendo*, that Plaintiff established a prima facie case of disparate treatment discrimination, PR Waste established a legitimate, nondiscriminatory reason for Plaintiff's suspension and termination. Plaintiff did not return to work from October 3, 2022, despite: (1) being reassigned to a new route where he would not work with Mr. Smith; (2) being warned that his continued absence would be considered work abandonment; and (3) given a final return to work date on December 29, 2022. (Docket No. 112-23).

Shifting the burden back to Plaintiff, Mr. Pérez-Figueroa failed to show that the reason proffered for his suspension and

termination was a pretext concealing unlawful discrimination due to his race. In fact, replacement by an individual of a different skin color, standing alone, is insufficient to establish pretext. Royall v. Nat'l Ass'n of Letter Carriers, AFL-CIO, 507 F. Supp. 2d 93, 107 n. 17 (D.D.C. 2007), aff'd, 548 F.3d 137 (D.C. Cir. 2008) ("mere fact that an African-American employee was replaced by a Caucasian employee is not, and cannot be, adequate to survive summary judgment without some evidence of discriminatory intent or some specific reason that the employer's proffered explanation is unworthy of credence")(citation omitted); Prater v. FedEx Corp. Servs., Inc., 2009 WL 1725978 *8 (D.D.C. 2009), case dismissed, 2009 WL 3571269 (D.C. Cir. 2009) (replacement by a Caucasian employee alone cannot establish a prima facie case of discrimination). Furthermore, Mr. Pérez-Figueroa testified that his suspension and termination from employment at PR Waste were "not exactly due to [race]." (Docket No. 106-3 at 218). He also testified that he was terminated because he did not return to work. (Docket No. 106-3 at 226-228).

As such, Mr. Pérez-Figueroa failed to establish he suffered disparate treatment discrimination based on his race.

### ii.  *Hostile Work Environment*

Where direct evidence of discrimination is lacking, hostile work environment claims are also subject to the burden shifting analysis articulated by the Supreme Court in McDonnell Douglas.

411 U.S. at 801. To establish a hostile work environment claim, a plaintiff must show that: (1) they belonged to a protected class (in this context, because of their race); (2) they were subjected to unwelcome harassment; (3) the harassment was based on their race; (4) the harassment was sufficiently severe or pervasive so as to alter the conditions of their employment and create an abusive work environment; (5) the harassment was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the plaintiff in fact perceived it to be so; and (6) some basis for employer liability has been established. *See* Stratton v. Bentley Univ., 113 F.4th 25, 50 (1st Cir. 2024) (citing O'Rourke v. City of Providence, 235 F.3d 713, 728 (1st Cir. 2001)).

In determining whether multiple acts meet the sufficiently severe or pervasive standard, the court evaluates several factors: "the severity of the conduct, its frequency, whether it is physically threatening or not, and whether it interfered with the victim's work performance." Zayas-Ortiz v. Becton Dickinson Caribe, Ltd., 968 F. Supp. 2d 463, 473 (D.P.R. 2013) (citing Gerald v. Univ. of Puerto Rico, 707 F.3d 7, 18 (1st Cir. 2013)). The court's "role is 'to distinguish between the ordinary, if occasionally unpleasant, vicissitudes of the workplace and actual harassment.'" Colon-Fontanez v. Municipality of San Juan, 660 F.3d 17, 44 (1st Cir. 2011) (quoting Noviello v. City of Bos., 398 F.3d

76, 91 (1st Cir. 2005)).

Here, Plaintiff claims that Mr. Smith's actions and attitudes towards him constituted a hostile work environment and that PR Waste allowed Mr. Pérez-Figueroa to be submitted to such an environment. (Docket No. 19 at 17). Mr. Pérez-Figueroa's allegations regarding Mr. Smith's yelling, if credited, could plausibly be considered unwelcome harassment. However, Plaintiff has failed to show how this purported harassment was based on or motivated by his race. Per Mr. Pérez-Figueroa's testimony, on various occasions Mr. Smith screamed at Plaintiff that: (1) "this cuckold is doing it just to fuck around" ("*este cabrón lo hace por joder*"); (2) "tomorrow I am not waking up early anymore" ("*mañana no voy a madrugar más na'*"); (3) "this asshole, I'm looking for an excuse to rip his head off" ("*este cabrón, estoy buscando una excusa pa' arrancarle la cabeza*"); and (4) "this asshole is doing this just to fuck around, he is doing it with bad intentions" ("*este cabrón está haciendo esto por joder, lo está haciendo de maldad*"). (Docket 106-3 at 130-32, 140 and Docket No. 112-14 at 8). Plaintiff offers no argument as to how or why these incidents are related to his race or were motivated by his race. Title VII does not shield employees from the "ordinary slings and arrows that workers routinely encounter in a hard, cold world." <u>De La Vega v. San Juan Star, Inc.</u>, 377 F.3d 111, 117 (1st Cir. 2004)(citation omitted); *see* also <u>Faragher v. City of Boca Raton</u>,

524 U.S. 775, 788 (1998) (noting that Title VII does not protect against "the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing" (quoting Barbara T. Lindemann & David D. Kadue, *Sexual Harassment in Employment Law* 175 (1992))). Importantly, Title VII protects from discrimination based on an outlined set of factors—race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). Absent any of them, a Title VII claim cannot prevail.

As such, Mr. Pérez-Figueroa failed to establish a prima facie case of a hostile work environment due to his race.

### 2. Retaliation

Title VII protects from retaliation for two distinct varieties of activity: opposition and participation conduct. Ray v. Ropes & Gray LLP, 799 F.3d 99, 107-108 (1st Cir. 2015) (citing 42 U.S.C. § 2000e-3(a)). The opposition clause prohibits employers from retaliating against a person who "has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e-3(a). Protected opposition activity includes responding to an employer's inquiries about inappropriate behavior, writing letters protesting an employer's allegedly unlawful actions, or picketing and boycotting an employer. Ray, 799 F.3d at 107-108 (1st Cir. 2015) (collecting cases); *see* also García-Colón v. State Insurance Fund Corp., 2024 WL 1886386 (D.P.R. 2024) (citing John

F. Buckley IV & Michael R. Lindsay, *Defense of Equal Employment Claims*, § 8A:3, Westlaw). On the other hand, participation activity refers to an employee's involvement in an "investigation, proceeding, or hearing" under Title VII, such as a lawsuit or EEOC complaint. García-Colón, 2024 WL 1886386 (citations omitted).

An adverse employment action is one that affects employment or alters the conditions of the workplace and typically involves discrete changes in the terms of employment such as "hiring, firing, failing to promote, reassignment with significantly different responsibilities or a decision causing significant change in benefits." Morales-Vallellanes v. Potter, 605 F. 3d 27, 35 (1st Cir. 2010).

A claimant may establish an actionable claim of retaliation under Title VII with either direct or circumstantial evidence. *See, e.g.,* DeCAire v. Mukasey, 530 F.3d 1, 20 (1st Cir. 2008). Absent direct evidence, the McDonnel Douglas burden-shifting framework applies and, to establish a prima facie case of retaliation, an employee must show that (1) they engaged in protected conduct; (2) they subjected to an adverse employment action; and (3) the adverse employment action is causally linked to the protected conduct. *See* Hernández, 986 F.3d at 102-103 (citing Rivera-Rivera v. Medina & Medina, Inc., 898 F.3d 77, 94 (1st Cir. 2018)); *see* also Colon v. Tracey, 717 F.3d 43, 49 (1st Cir. 2013).

Provided that a claimant manages to establish the prima facie case, "the burden shifts to the employer to 'produce a legitimate, non-discriminatory reason for the termination.'" Gazco-Hernández v. Neffenger for Transportation Sec. Admin., 299 F. Supp. 3d 351, 360 (D.P.R. 2018) (citing Cameron v. Idearc Media Corp., 685 F.3d 44, 48 (1st Cir. 2012)). Finally, if the employer satisfies this standard, "the ball returns to the plaintiff's court, in which [he] must prove by a preponderance of the evidence that defendant's alleged nondiscriminatory reason was in fact a pretext for discrimination." Id. (citing Goncalves v. Plymouth County Sheriff's Dep't, 659 F.3d 101, 105 (1st Cir. 2011)).

Here, Plaintiff complained internally, including: (1) an August 19, 2022, WhatsApp message to Ms. Ortiz; (2) an August 22, 2022, meeting with Ms. Ortiz, Mr. Quiñones, Mr. Marrero, and Mr. Smith; (3) a September 30, 2022, meeting with Ms. Ortiz; (4) an October 5, 2022, letter to the Human Resources Department; and (5) an October 7, 2022, interview with Ms. Rivera. See (Docket Nos. 112-7; 106-3 at 125-33, 139; 112-11 at 3; and 112-14). On October 13, 2022, Mr. Pérez-Figueroa sent an email to Ms. Rivera and Ms. Ortiz stating that Ms. Rivera had spoken with him on the phone earlier that day and informed him that, due to his absences, he was suspended without pay until the investigation was completed. (Docket No. 124-1 at 2). On December 6, 2022, Plaintiff filed an EEOC charge alleging discrimination based on race and retaliation.

(Docket No. 106-21). Plaintiff argues that, in retaliation for his protected activity, PR Waste suspended him without pay and later terminated him. (Docket No. 19).

As a threshold matter, there is no question that Mr. Pérez-Figueroa's act of filing EEOC charge constitutes protected participation activity. *See* García-Colón, 2024 WL 1886386; *see also* 42 U.S.C. § 2000e-3(a) ("It shall be unlawful employment practice for an employer to discriminate against any of his employees . . . because he has made a charge . . . under this subchapter."). Plaintiff also engaged in protected opposition activity when met with and wrote to his superiors and complained about Mr. Smith's actions. Mr. Pérez-Figueroa was undeniably subject to adverse employment actions when he was suspended in October of 2022 and later terminated in January 2023. Plaintiff does not proffer argument as to the causal link between the adverse employment action and the protected conduct. However, given their temporal proximity, the Court moves to the second round of the analysis and shifts the burden to PR Waste to establish a non-retaliatory reason for Mr. Pérez-Figueroa's suspension and termination.

PR Waste alleges it suspended and later terminated Mr. Pérez Figueroa because Plaintiff refused to return to work and abandoned his job. (Docket Nos. 112-23 and 124-1 at 2). Plaintiff did not return to work from October 3, 2022, despite being instructed to

do so and being warned that failure to return to work would be considered work abandonment. *See* id. These absences, uncontroverted by Plaintiff, provide a legitimate, non-discriminatory reason for Mr. Pérez-Figueroa's suspension and termination.

To survive a motion for summary judgment, a "plaintiff must point to evidence in the record that would permit a rational factfinder to conclude that the employment action was retaliatory." Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 57 (1st Cir.2000) (citation omitted); *see* also Gonzalez-Rodriguez v. Potter, 605 F. Supp. 2d 349, 363 (D.P.R. 2009). Hence, the third prong of Title VII retaliation claims "require but-for causation." Univ. of Texas Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 360 (2013). That is, a claimant must show that the harm would not have occurred in the absence of the protected conduct. Plaintiff has failed to do so. In fact, Plaintiff offers no argument as to how these adverse employment actions were pretextual nor how his protected activity was the but-for cause of them, rather than his continued absences.

As such, Mr. Pérez-Figueroa has not only failed to make a prima facie case for substantive Title VII discrimination, but he has also failed to show he suffered retaliation. Plaintiff has, therefore, failed "to make a showing sufficient to establish the existence of an element essential his case, and on which he will

bear the burden of proof at trial." Kohl's Dept. Stores, Inc., 774 F.3d at 131 (quoting Celotex Corp., 477 U.S. at 322). Wherefore, Plaintiff's substantive and retaliation Title VII claims are **DISMISSED WITH PREJUDICE.**

### B. Puerto Rico Law Claims

#### 1. Puerto Rico Laws 100 and 115

Mr. Pérez-Figueroa raised claims under Puerto Rico Laws 100 and 115. (Docket No. 19 at 18). Puerto Rico Laws 100 and 115 are the local counterparts to federal anti-discrimination and retaliation statutes. Puerto Rico Law 100 of June 30, 1959, P.R. Laws Ann. tit. 29, §§ 146 et seq.; Puerto Rico Law 115 of December 20, 1991, Laws Ann. tit. 29, § 194a; *see* also Lopez-Hernandez v. Terumo Puerto Rico LLC, 64 F.4th 22, 32 (1st Cir. 2023). These laws are subject to the same analysis as their federal counterparts. Lopez-Hernandez, 64 F.4th at 32. Indeed, Title VII's anti-retaliation law and the anti-retaliation provisions under Puerto Rico Law 115 largely overlap. Id. "Law 100, for all intents and purposes, is ... the Puerto Rican 'analog[ue] to Title VII.'" Rivera-Rivera v. Medina & Medina, Inc., 898 F.3d 77, 97 (1st Cir. 2018) (quoting Monteagudo v. Asociación de Empleados del Estado Libre Asociado de P.R., 554 F.3d 164, 169 n.3 (1st Cir. 2009)).

Given the symmetry between the anti-retaliation provisions under Title VII and Puerto Rico Laws discussed above, the Court dismissed Mr. Pérez-Figueroa's Puerto Rico anti-discrimination and

anti-retaliation claims for the same reasons that it dismissed Plaintiff's Title VII claims. *See* <u>Bonilla-Ramirez v. MVM, Inc.</u>, 904 F.3d 88, 96-97 (1st Cir. 2018). For these reasons, Plaintiff's Law 100 and 115 claims are hereby **DISMISSED WITH PREJUDICE.**

    2. Puerto Rico Law 80

Mr. Pérez-Figueroa also brought a claim under Law 80, which "requires employers to compensate at-will employees who are discharged without just cause." <u>Ruiz-Sánchez v. Goodyear Tire & Rubber Co.</u>, 717 F.3d 249, 254 (1st Cir. 2013); P.R. Laws Ann. tit. 29, § 185a; *see* (Docket No. 19 at 19).

Law 80 provides that "[a] discharge made by the mere whim of the employer or without cause relative to the proper and normal operation of the establishment shall not be considered as a discharge for good cause." P.R. Laws Ann. tit. 29, § 185b(f). On the other hand, the statute specifies that the following constitute examples of good-cause discharge: (1) "the worker indulges in a pattern of improper or disorderly conduct[;]" (2) the employee's failure to perform his or her work "in an efficient manner, or ... doing it belatedly and negligently or in violation of" quality standards; and (3) "repeated violations of the reasonable rules and regulations established" by the employer, if a written copy has been duly furnished to the employee. <u>Id.</u> § 185b.

The following burden-shifting framework is applicable to Law 80 claims: "(1) the employee must [first] show that he or she has

been discharged and allege that the dismissal was not justified; (2) the burden then shifts to the employer to show, by a preponderance of the evidence, that the dismissal was justified; and (3) if the employer shoulders that burden, the employee must rebut the showing of good cause." Garcia-Garcia v. Costco Wholesale Corp., 878 F.3d 411 (1st Cir. 2017) (quoting Echevarria v. AstraZeneca Pharm. LP, 856 F.3d 119 (1st Cir. 2017)).

In the present case, Plaintiff easily overcomes the first hurdle—it is undisputed that he was discharged from his employment with PR Waste and he alleges in his complaint that such discharge was not justified.

The burden now shifts to PR Waste to show by a preponderance of the evidence that Plaintiff's discharge was based on good cause. See id. To meet the good-cause prong, PR Waste "need only demonstrate that it had a reasonable basis to believe that an employee has engaged in one of those actions that the law identified as establishing such cause." Id. (quoting Echevarría, 856 F.3d at 140). In fact, even a "perceived violation suffices to establish that [the employer] did not terminate [the employee] on a whim, but rather for a sensible business-related reason." Perez v. Horizon Lines, Inc., 804 F.3d 1, 9 (1st Cir. 2015) (citing Hoyos v. Telecorp Commc'ns, Inc., 488 F.3d 1, 10 (1st Cir. 2007)). The termination need only be "non-arbitrary" and bear "some relationship to the business' operation." Id.

Here, PR Waste established a pattern of absences since October 3, 2022 and Plaintiff's refusal to return to work—despite being changed from his route, given a final return to work day, and more than one warning that not returning to work would be considered work abandonment—as just cause for Mr. Pérez-Figueroa's termination. Therefore, PR Waste has shouldered its burden of proving by a preponderance of the evidence that Plaintiff's employment was terminated for good cause. *See* Pérez, 804 F.3d at 10 ("Although [employee] has shown that he was discharged, a reasonable jury could only conclude that [employer] ha[d] met its burden of showing just cause.").

"Because [PR Waste] established cause for [Mr. Pérez-Figueroa's] termination, to withstand summary judgment [Plaintiff] bore the burden to rebut that showing." Id. To satisfy his burden, Plaintiff was required to do more than cast doubt on PR Waste's proffered reason for his discharge; instead, Plaintiff had to "adduce probative evidence that [PR Waste] did not genuinely believe in or did not in fact terminate [Plaintiff] for the reason given." Id. at 11.

Plaintiff testified that, because of his complaint on September 30, 2022, he decided not to return to work, and that he was terminated because he did not return. (Docket No. 106-3 at 226-228). Plaintiff offered no additional, non-conclusory

reasoning to refute PR Waste's allegations of just cause for termination.

For these reasons, Plaintiff's Law 80 claim is hereby **DISMISSED WITH PREJUDICE.**

3. Tort Claims

In addition to the claims discussed above, Plaintiff seeks economic and emotional damages pursuant to Articles 1536 and 1540 of the Puerto Rico Civil Code, P.R. Laws Ann. tit 31, §§ 10801 and 10805. (Docket No. 19 at 18).[2]

Article 15363 is Puerto Rico's general tort statute, and states that a person who "through fault or negligence, causes damage to another, is obliged to repair it." P.R. Laws Ann. tit. 31, § 10801; *see*, e.g., <u>Rivera-Lopez v. Clinical Med. Servs., Inc.</u>, 2025 WL 3653805 at *4 (D.P.R. 2025). Article 1540 governs vicarious liability—when a person or entity can be held liable for damages caused by another person's negligent or wrongful conduct. P.R. Laws Ann. tit. 31, § 10801; *see*, e.g., <u>Gonzalez Villegas v. Doctors' Ctr. Hosp.</u>, 2025 WL 949471 at *6 (D.P.R. 2025).

This District has repeatedly held that "provisions of the Puerto Rico Civil Code are supplementary to special legislation like Title VII, and that a special law prevails over a general law." <u>Orellano-Laureano v. Instituto Medico del Norte, Inc.</u>, 2023

---

[2] The Puerto Rico Civil Code was amended in 2020; Articles 1536 and 1540 were previously titled Articles 1802 and 1803, respectively. *See* González-Ortíz v. Puerto Rico Aqueduct & Sewer Auth., 2024 WL 3759659, at *10 (D.P.R. 2024).

WL 4532418, at *6 (D.P.R. 2023) (citation omitted); Torres-Figueroa v. Televicentro of Puerto Rico, LLC, 2024 WL 4769756, at *2 (D.P.R. 2024) (explaining that "laws such as Title VII [and local Puerto Rico laws] are special laws" and so supplant Article 1536). Tort claims under Articles 1536 and 1540 are to be dismissed when they are entirely duplicative. *See* Santana-Colon v. Houghton Mifflin Harcout Pub. Co., 81 F. Supp. 3d 129, 140 (D.P.R. 2014).[3] The Puerto Rico Supreme Court and courts in this District have held that, "to the extent that a specific labor or employment law covers the conduct for which a plaintiff seeks damages, he is barred from using the same conduct to also bring a claim under Article [1536]." Id.

As Plaintiff's own *Amended Complaint* confirms, his Article 1536 and Article 1540 claims seek additional avenues of relief for the same nucleus of facts concerning PR Waste's alleged discrimination and retaliation against Plaintiff. (Docket No. 19). Plaintiff does not allege conduct that differs from the conduct with which he pleads his claims based on Title VII, and Puerto Rico Laws 80, 90, 100 and 115. Id.

That overlap is dispositive; it requires the dismissal of Plaintiff's Article 1536 and Article 1540 claims. Here, Plaintiff's invocation of the Puerto Rico Civil Code's general

---

[3] The Santana-Colon case referred to the former Article 1802. See supra note 1; 81 F. Supp. 3d at 140.

tort framework does not identify any distinctly tortious act, duty, or injury independent of the alleged discrimination and retaliation Plaintiff challenges through his other claims. Id. For these reasons, Plaintiff's Article 1536 and Article 1540 claims are hereby **DISMISSED WITH PREJUDICE.**

4. Puerto Rico Constitution Claims

Plaintiff claims violations of Sections 1, 3, 8, 16 and 20 of Article II of the Puerto Rico Constitution. (Docket No. 19 at 18). However, Plaintiff has not discussed the elements of any cause of action arising under the Puerto Rico Constitution, much less demonstrated his entitlement to relief thereunder. "A party may not simply throw a statutory reference into a complaint hoping to later flesh out its claim with facts in support." Ruiz Rivera v. Pfizer Pharm., LLC, 521 F.3d 76, 88 (1st Cir. 2008). Given the opportunity, Plaintiff did not flesh out the law or the facts to support these claims. Therefore, Plaintiffs' claims arising under Sections 1, 3, 8, 16 and 20 of Article II of the Constitution of Puerto Rico are **DISMISSED WITH PREJUDICE.**

## C. Supplemental Jurisdiction

First Circuit case law is clear "that district courts may decline to exercise supplemental jurisdiction over pendent state law claims when the anchor federal claims for those state law claims are dismissed." Borrás-Borrero v. Corporación del Fondo del Seguro del Estado, 958 F.3d 26, 37 (1st Cir. 2020); *see also* 28

U.S.C. § 1367(c). Where, as here, the federal claims are dismissed, a District Court is well within its discretion to decline to exercise supplemental jurisdiction over pending state-law claims. *See e.g.*, Massó-Torrellas v. Mun. of Toa Alta, 845 F.3d 461, 469-70 (1st Cir. 2017); *see also*, Rivera-Diaz v. Humana Ins. of Puerto Rico, Inc., 748 F.3d 387, 392 (1st Cir. 2014) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7, (1988)) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors [...] will point toward declining to exercise jurisdiction over the remaining state-law claims."). Due to the scant guidance on Puerto Rico Law 90, the Court declines to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(1) (authorizing district courts to decline to exercise supplemental jurisdiction over a claim if it raises a novel or complex issue of state law). Therefore, Mr. Pérez-Figueroa's remaining supplemental claim under Puerto Rico Law 90 is hereby **DISMISSED WITHOUT PREJUDICE.**

## V.    CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendant's *Motion for Summary Judgment* (Docket No. 106). Plaintiff's claims pursuant to Title VII, Article II of the Puerto Rico Constitution, Puerto Rico Laws 80, 100 and 115, and Articles 1536 and 1540 of the Puerto Rico Civil Code are hereby **DISMISSED WITH PREJUDICE,**

Civil No. 23-1471 (RAM)                                                    34

whereas Plaintiff's Puerto Rico Law 90 claim is **DISMISSED WITHOUT PREJUDICE.** Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 13th day of August 2026.

s/Raúl M. Arias-Marxuach
UNITED STATES DISTRICT JUDGE